**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

FILED

2008 Sep 12 PM 04:22

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | SIPA Liquidation |
| | ) | |
| Continental Capital Investment Services, | ) | Related Adv. Pro. No. 03-3370 |
| Inc. and Continental Capital Securities, Inc. | ) | |
| | ) | Adv. Pro. No. 05-3147 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Thomas S. Zaremba, SIPA Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| William C. Davis, et al., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF DECISION AND ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on Plaintiff's unopposed motion for summary judgment [Doc. #60]. This proceeding was commenced in connection with an underlying broker-dealer liquidation proceeding brought against Continental Capital Investment Services, Inc. ("CCIS") and Continental Capital Securities, Inc. ("CCS") (collectively, "Debtors"). Plaintiff is the liquidation trustee appointed under the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA"). In his

complaint, Plaintiff objects to a SIPA claim filed by Defendant William C. Davis ("Davis") and alleges, among other things, that Davis was a director and officer of Debtors who conducted a complicated Ponzi scheme in which he would transfer, convert, or embezzle funds of Debtors' customers and that he engaged in other fraudulent conduct causing Debtors and their customers damages. In addition to Plaintiff's claim objection, his complaint includes six counterclaims, including claims alleging conversion and fraudulent misrepresentation (Count Three and Count Five).[1] Plaintiff moves for summary judgment on his claim objection and his conversion and fraudulent misrepresentation counterclaims. The court has jurisdiction over this adversary proceeding under 15 U.S.C. §§ 78eee(b)(4) and 78fff(b). For the reasons that follow, Plaintiff's motion will be granted as to his claim objection and as to liability on the conversion claim but will otherwise be denied.

## FACTUAL BACKGROUND

In support of his motion, Plaintiff relies on documents filed in connection with, and transcripts of hearings in, a criminal proceeding in which Davis was convicted of twenty-four federal felonies. In 2005, a federal indictment and a supplemental indictment were returned, charging Davis with twenty-seven federal felonies, including mail fraud, bank fraud, theft from an employee pension plan, false statements in a document required under the Employee Retirement Income Security Act of 1974 ("ERISA"), and money laundering. [Pl. Ex. 2; Doc. # 62, Tr. Plea Hrg., p. 56-57]. Davis entered into a Plea Agreement, [Pl. Ex. 3], and plead guilty to sixteen counts of mail fraud, five counts of bank fraud, two counts of theft from a pension plan, and one count of making a false statement in connection with an ERISA plan, [Doc. # 62]. In the Plea Agreement, Davis agreed that "[t]he allegations contained in the indictment and supplemental indictment are true and accurate in all material respects. . . ." [Pl. Ex. 3, ¶ 5.a.]. At a plea hearing on August 11, 2006, the District Court placed Davis under oath, determined that he was competent to understand the nature of the plea proceeding and that he understood his Constitutional and statutory rights. [Doc. # 62, pp. 3-20]. The federal prosecutor then recounted the factual bases for Davis's plea. When questioned by the District Court at various times throughout the hearing, Davis repeatedly stated that he agreed with the prosecutor's presentation of facts. [*Id.* at 29, 30-33, 35, 39-40, 50, 52-53, 54, 52-53, 54, 56, 59-60, 63].

The following is a summary of facts alleged in the indictment and/or recounted by the prosecution

---

[1] Other counts alleged in the complaint include fraudulent and/or preferential transfer claims and claims for turnover and accounting, punitive damages and injunctive relief.

at the plea hearing that were admitted by Defendant and that the court finds relevant to this proceeding as they mirror allegations in the complaint that form the basis of Plaintiff's fraud and conversion claims.[2] Davis was the president and chief executive officer of Continental Capital Corporation, a non-debtor holding company of subsidiaries that included broker dealers CCIS and CCS, Debtors in the underlying SIPA liquidation proceeding.[3] [Doc. # 62, p. 28; *Cf.* Complaint ¶ 16]. He was engaged in the business of selling securities and investment products to Debtors' customers. [*Id.* at 28-29]. As part of a scheme to defraud, Davis engaged in the following conduct:

> (1) He invested customers' funds in high risk, speculative investments that were unsuitable for his customers, many of whom had explicitly told him that they were seeking safe, conservative investments. [Pl. Ex. 2, Counts 1-16, ¶ 12 (Complaint, ¶ 26)].
>
> (2) He did so without providing full disclosure to them, including the risks associated with the investment, the financial solvency of the company, and any conflict of interest that he had. [*Id.* at ¶ 14 (Complaint ¶ 29)].
>
> (3) Without authority and knowledge of his customers, he liquidated investments customers had in marketable investments, and purchased securities and promissory notes in non-marketable investments and non-existent entities. [*Id.* at ¶ 13 (Complaint, ¶ 28)].
>
> (4) He utilized letters of authorization that were forged or had been signed in blank to sell securities in customers' brokerage accounts and invested customers' funds without their knowledge, consent or authorization. [*Id.* at ¶ 17 (Complaint ¶ 34)].
>
> (5) He created loan obligations on customers' margin accounts without authorization. [*Id.* at ¶ 18 (Complaint ¶¶ 26-27)].
>
> (6) He used customers' funds to purchase securities and promissory notes in companies that were

---

[2] Following each fact set forth by the court, the court includes in parentheses the analogous paragraph in the Complaint.

[3] Both the indictment and Plaintiff's adversary complaint also allege that Davis served as a director and/or officer of the Debtor companies. [*See* Doc. # 1, Complaint, ¶ 16; Pl. Ex. 2, ¶ 3]. However, Davis's amended answer admits only that he was "a Director/Officer *and/or* Registered Representative of *some* of the companies mentioned [in paragraph 16 of the Complaint]." [Doc. # 28, ¶ 10]. The court, therefore, finds the pleadings an insufficient basis upon which to find that Davis was in fact a director or officer of the Debtor companies. And although Davis agrees in his plea agreement that the allegations in the indictment are true and accurate in all *material* respects, it is not clear to the court that Davis' position as director or officer of the Debtor companies was material to his conviction of the crimes to which he plead guilty. At the plea hearing, the prosecutor mentioned only the fact that Debtor was president and chief executive officer of the non-debtor holding company, Continental Capital Corporation.

05-03147-maw    Doc 68    FILED 09/12/08    ENTERED 09/12/08 16:22:21    Page 3 of 9

insolvent or non-existent and then used the funds to perpetuate a Ponzi scheme, for Davis's personal use, for business expenses of Continental Capital Corporation and its related entities and other non-investment purposes. [*Id.* at ¶¶ 19, 22 (Complaint ¶¶ 30, 37, 40)].

(7) He used customers' funds to purchase promissory notes from Continental Capital Corporation and related entities, which funds were then diverted to purposes other than legitimate business purposes, including perpetuation of a Ponzi scheme. [*Id.* at ¶ 24 (Complaint ¶ 37)].

(8) He provided to customers spreadsheets and other reports listing valuations of their investments, which valuations contained material misrepresentations as to the true value of the investments. [*Id.* at ¶ 25 (*Cf.* Complaint ¶ 41)].

At the conclusion of the hearing, Davis entered his plea of guilty to the twenty-four counts, and the District Court found him guilty on each of those counts. [*Id.* at 60-62]. The District Court held a sentencing hearing on September 10, 2007, at which Plaintiff, as SIPA Trustee, testified regarding the losses incurred by victims of all of Davis's crimes. On September 20, 2007, the District Court determined that Davis was not entitled to a reduction in his sentence for acceptance of responsibility and sentenced Davis to a term of 188 months imprisonment, the maximum under the Sentencing Guidelines.[4] [Doc. # 61, Tr. of Sept. 20, 2007 Sentencing Hrg., p. 107, 119; Pl. Ex. 7, p.2]. In addition, the District Court ordered Davis to pay restitution in the amount of $18,549,898.17. [Pl. Ex. 7, p. 6]. The restitution order includes $13,957,516.80 to be paid to individual victims, $350,829 to be paid to the banks who were victims of Davis's crimes, and $4,241,552.37 to be paid to SIPC for its administrative expenses in Debtors' liquidation proceeding. [Doc. # 61, pp. 121, 123-24].

Under SIPA, all customer claims against Debtors must be filed with the Trustee. 15 U.S.C. § 78fff-2(a)(2). Davis submitted to the Trustee a claim for securities in the amount of $300,000 that were loaned to Continental Capital Corporation in 2001 and 2002. [Pl. Ex. 9].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine

---

[4] More specifically, Davis was sentenced to a term of 60 months on each of counts 1-8 and 19-21, and a term of 188 months on each of counts 9-16, 17-18 and 1-3 of the Supplemental Indictment, to be served concurrently. [Pl. Ex. 7, p. 2].

issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*. Although a party fails to respond to a motion for summary judgment, the court must nevertheless satisfy itself that the moving party has met the demands of Rule 56 before granting the motion. *See Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).

## II. Plaintiff's Arguments

In his complaint, Plaintiff objects to Davis's SIPA claim and alleges, among other things, claims of conversion and fraudulent misrepresentation. He argues that applying the doctrines of issue preclusion and judicial estoppel with respect to Davis's criminal conviction, there are no genuine issues as to any material fact and that he is, therefore, entitled to summary judgment on these claims in the amount of $13,957,516.80. Plaintiff further argues that the undisputed facts entitle him to summary judgment on his objection to Davis's SIPA claim.

Judicial estoppel is "an equitable doctrine invoked by the court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). The purpose of the doctrine is to "'preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment.'" *Id.* (quoting *Teledyne Indus. v. Nat'l Labor Relations Bd.*, 911 F.2d 1214, 1218 (6th Cir.1990)). The Sixth Circuit recently explained that judicial estoppel is generally limited to circumstances "where a party asserts a position in litigation that is adopted by the court, gains an advantage through that assertion, and then attempts to assert a clearly opposite position in a later proceeding." *United States v. Hammon*, No. 06-4607, 2008 U.S. App. LEXIS 10027, *15, 2008 WL 1986700, *5 (6th Cir. May 6, 2008).

The court does not find the application of judicial estoppel appropriate in this case. Plaintiff has failed to show that Davis gained any advantage by asserting his guilt in his criminal proceeding. *See Hammon*, 2008 U.S. App. LEXIS 10027, *18-19 (finding judicial estoppel did not apply where the plaintiff failed to point to any evidence showing that the defendant received an advantage in his criminal proceeding by stipulating to a base offense level in his plea agreement). The court did not grant Davis a downward departure from the Sentencing Guidelines for acceptance of responsibility and he was sentenced to the maximum term of imprisonment under the guidelines. And, although the prosecution agreed to, and did, dismiss the two money laundering counts of the indictment as a result of Davis's guilty plea, there is no indication that the dismissal of those counts resulted in a lower sentence. The District Court ordered the sentences imposed on each of the counts to which he plead guilty to be served concurrently. And Plaintiff has not demonstrated that the money laundering counts would have resulted in consecutive rather than concurrent sentences.

Issue preclusion forecloses "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell,* 128 S.Ct. 2161, 2171 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). Courts look to federal law in determining the preclusive effect of a federal conviction. *See Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007). The Sixth Circuit has identified following four requirements for the application of issue preclusion:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
>
> (2) determination of the issue must have been necessary to the outcome of the prior proceeding;
>
> (3) the prior proceeding must have resulted in a final judgment on the merits;
>
> (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*N.A.A.C.P. v. Detroit Police Officers Assoc.*, 821 F.2d 328, 330 (6th Cir.1987). Issue preclusion may be asserted "offensively" by a litigant who was not a party to the prior federal case against a person who was a party in that case. *Allen v. McCurry,* 449 U.S. 90, 94-95 (1980).

In this case, the same facts alleged in the complaint that form the basis of Plaintiff's fraudulent misrepresentation and conversion claims were also the basis of the mail fraud claims alleged in Counts 1-16 of the indictment to which Davis plead guilty. In his plea agreement, he agreed that the allegations in the

6

indictment are true and accurate "in all material respects." [Pl. Ex. 3, ¶ 5.a.]. The record establishes that Davis voluntarily chose to plead guilty to the charges and that he agreed with the facts supporting his guilty plea. A judicial determination of his guilt was made and a final judgment has been entered. "A guilty plea is as much a conviction as a conviction following a jury trial and therefore is considered to be an adjudication on the merits." *Biondic v. United States (In re Biondic)*, 1994 WL 903473, *3 Bankr. N.D. Ohio 1994) (citing *Gray v. Comm'r of Internal Revenue*, 708 F.2d 243 (6th Cir. 1983) (rejecting an argument that an issue was not actually litigated in the appellant's criminal case where he had entered a guilty plea)). The court concludes that Davis is collaterally estopped from relitigating the facts upon which his conviction was based. Moreover, Davis has failed to show that there is a genuine issue for trial as to any of the facts admitted by him at the plea hearing.

With this in mind, the court addresses Plaintiff's fraudulent misrepresentation and conversion claims, which he brings standing in the shoes of the customers with whom Davis dealt. *See* 15 U.S.C. § 78fff-4(c) (providing that a SIPA trustee shall be subrogated "to the extent of" SIPC money used to satisfy customer claims); 15 U.S.C. § 78fff(a)(3) (stating that one of the purposes of a SIPA liquidation is "to enforce rights of subrogation as provided in this chapter).

**A. Fraudulent Misrepresentation**

Plaintiff alleges that Davis repeatedly misrepresented facts, or purposely failed to disclose material facts, to Debtors' customers. In order to prove fraudulent misrepresentation, Plaintiff must establish each of the following elements: (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Funk v. Durant*, 155 Ohio App. 3d 99, 103 (2003).

In his plea agreement, Davis admits all of the material facts alleged in the indictment. And his plea of guilty to sixteen counts of mail fraud is an admission to each of the elements of the crime. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). While these admissions may satisfy the first four elements of a fraudulent misrepresentation claim, they do not address the fifth element, justifiable reliance. The crime of mail fraud consists of the following elements: (1) defendant devised or intended to devise a scheme to defraud; (2) defendant used the mail in furtherance of the scheme; and (3) defendant intended to deprive the

7

victim of money or property. 18 U.S.C. § 1341; *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007). Reliance, however, is not an element of mail fraud. *Neder v. United States*, 527 U.S. 1, 24-25 (1999) (stating that "[t]he common-law requirements of 'justifiable reliance' and 'damages' . . . plainly have no place in the federal fraud statutes"). Since reliance was not a fact material to Davis's conviction, it is not a fact admitted by him either in his plea agreement or in entering his guilty plea. Having failed to present any evidence demonstrating justifiable reliance by Davis's customers, Plaintiff is not entitled to summary judgment on this claim.

### B. Conversion

Conversion is "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Jarupan v. Hanna*, 173 Ohio App. 3d 284, 293 (2007). To prevail on a conversion claim under Ohio law, a plaintiff must prove the following three elements: (1) the defendant exercised dominion or control (2) over the plaintiff's property (3) in a manner inconsistent with the plaintiff's rights of ownership. *Id.*

In his motion, Plaintiff does not identify which facts he relies on in support of his conversion claim. Nevertheless, the following facts admitted by Davis are undisputed and clearly demonstrate his exercise of dominion and control over his customers' property that was inconsistent with their rights of ownership. Davis admitted that without his customers' knowledge, consent or authorization he (1) liquidated customers' marketable investments and purchased securities and promissory notes in non-marketable investments and non-existent entities, (2) utilized letters of authorization that were forged or had been signed in blank to sell securities in customers' brokerage accounts, and (3) created loan obligations on customers' margin accounts. Plaintiff is, therefore, entitled to summary judgment as to Davis's liability on the conversion claim.

### C. Damages

Plaintiff argues that he is entitled to judgment in the amount of $13,957,515.80. He relies on Davis's criminal conviction and the District Court's order requiring Davis to pay restitution to his individual victims in that amount. The District Court's restitution order encompassed losses caused by Davis's criminal acts. *See United States v. Szilvagyi*, 398 F. Supp. 2d 842, 849-50 (E.D. Mich. 2005); 18 U.S.C. § 3664 (requiring a court to determine the total amount of the victim's loss when ordering restitution). However, it did not distinguish between losses caused by Davis's fraudulent misrepresentations and losses caused by his conversion of customers' property. The restitution order, therefore, overstates the damages to which Plaintiff is entitled on his conversion claim. And the court cannot determine such damages with any

accuracy on the record now before it.[5]

### D. Objection to Davis's SIPA Claim

Finally, Plaintiff argues that he is entitled to summary judgment on his objection to Davis's SIPA claim. The court agrees. Davis submitted a claim in the amount of $300,000 for securities that were loaned to Continental Capital Corporation in 2001 and 2002. Continental Capital Corporation, however, is not a debtor in the underlying liquidation proceeding. Davis is, therefore, neither a customer nor a creditor of Debtors and is not entitled to a distribution from customer property or from Debtors' general estate.[6] *See* 15 U.S.C. § 78lll(2) (defining "customer," as "any person . . . who has a claim on account of securities received, acquired, or held *by the debtor*. . ."); 11 U.S.C. § 101(10) (defining "creditor" as an "entity that has a claim *against the debtor*").

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 60] be, and hereby is, **GRANTED** as to Plaintiff's Objection to Davis's SIPA Claim and as to liability on Plaintiff's conversion claim but is otherwise **DENIED.**

---

[5] At the sentencing hearing, Plaintiff testified regarding losses incurred by Davis's customers. Plaintiff testified that SIPA covered losses totaled $4,724,873.10 at the time of the sentencing hearing, [Tr. Sept. 10, 2007 Sentencing Hrg., p. 60], and that SIPA covered losses were losses where a theft of customer property had occurred, [*Id.* at 53]. While this testimony could support a finding of damages in the amount of $4,724,874.10, Plaintiff has not relied on this testimony for a determination of damages resulting from Davis's conversion of customer property. The court therefore will not grant summary judgment in that amount since the losses covered under SIPA are limited to $100,000 per account if the loss is a cash loss and $500,000 if the loss is a securities loss, [*Id.* at 54-55]; *see* 15 U.S.C. § 78fff-3(a), and Plaintiff testified that some customers experienced losses that exceeded the coverage allowed under SIPA, [Tr. Sept. 10, 2007 Sentencing Hrg., p. 56].

[6] Plaintiff also argues that Davis has admitted that he was a director or officer of Debtors and, as such, is not entitled to coverage under SIPA. *See* 15 U.S.C. § 78fff-3(a)(4). However, as discussed in footnote 3, the court finds the record before it to be an insufficient basis upon which to find that Davis was in fact a director or officer of the Debtor companies.